PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREW HUNTHAUSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPINE MEDIA, LLC, D/B/A  and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.  3:22-cv-1970-GPC-DDL<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

## I.   <u>INTRODUCTION</u>

1.     Whenever someone watches a video on www.yourbump.com (the "Website"), Defendants secretly report all the details to Facebook: the visitor's identity, the titles watched, and more. Why? So, Facebook can bombard the person with *more* ads urging the person to buy products from Defendant's advertising partners.

2.     As shown below, Defendants' actions violate the Video Privacy Protection Act ("VPPA"). As such, Defendants are liable to each class member for $2,500 and related relief.

## II.   <u>JURISDICTION AND VENUE</u>

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Video Privacy Protection Act ("VPPA"), a federal law.

4.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the class claims occurred in this District.

5.     Defendants are subject to personal jurisdiction because they have sufficient minimum contacts with California and do business with California residents.

## III.   <u>PARTIES</u>

6.     Plaintiff Drew Hunthausen ("Hunthausen") is a resident and citizen of California.

7.     Defendant is a New York LLC that owns, operates, and/or controls the Website.

8.     The above-named Defendants, along with their affiliates and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

9.     Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## IV.   FACTUAL ALLEGATIONS

### A.   THE FACEBOOK TRACKING PIXEL

10.    Facebook is a social networking company where users are required to identify themselves by "the name they go by in everyday life."[1]  To create a Facebook account, a user must provide first name, last name, date of birth and gender.[2]

11.    Facebook generates revenue by selling advertising space on its website based upon its ability to identify user interests.[3]  Facebook can identify user interests by monitoring "offsite" user activity, which allows Facebook to judge user interests beyond what users freely disclose.[4]

12.    Facebook enables advertisers to identify "people who have already shown interest in [their] business", which Facebook calls "Custom Audiences."[5] The Custom Audiences tool requires advertisers to supply user data to Facebook, and most do so via the Facebook Tracking Pixel.[6]

13.    The Facebook Tracking Pixel is a device included programming code that advertisers can integrate into their website.  Once activated, the Facebook Tracking Pixel

---

[1] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity (last visited January 2023).
[2] FACEBOOK, SIGN UP, https://www.facebook.com/ (last visited January 2023).
[3] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/20502906038706 (last visited January 2023).
[4] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting (last visited January 2023).
[5] FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273 (last visited January 2023).
[6] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097533764 94 (last visited January 2023); FACEBOOK, CREATE A WEBSITE CUSTOM AUDIENCE, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited January 2023).

"tracks the people and type of actions they take."[7]  When the Facebook Tracking Pixel captures an action, it sends a record to Facebook, which Facebook then assimilates into the Custom Audiences dataset.

14.    Advertisers control what actions—or, as Facebook calls it, "events"— the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views.[8]

15.    Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[9] HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[10] Pixel-specific Data includes "the Pixel ID and cookie."[11]

**B.    DEFENDANTS ARE A "VIDEO TAPE SERVICE PROVIDER" UNDER THE VPPA**

16.    Defendants are engaged in the business of delivery of video materials.  18 U.S.C. § 2710(a)(4).  Specifically, Defendants' business model involves monetizing instances in which consumers watch videos on the website.

17.    Consistent with its business model of monetizing videos, the Website hosts and delivers content including videos.  As such, Defendant is a Video Tape Service Provider under the VPPA.

**C.    DEFENDANT DISCLOSED PLAINTIFF'S PII TO FACEBOOK**

18.    The VPPA defines PII to "include[]" "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).  This means "information that would 'readily

---

[7] FACEBOOK,RETARGETING, https://www.facebook.com/business/oals/reta getting.
[8]    See   FACEBOOK,   FACEBOOK   PIXEL,   ACCURATE   EVENT   TRACKING, ADVANCED,https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST    PRACTICES    FOR    FACEBOOK    PIXEL    SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142    (last   visited January 2023).
[9]  FACEBOOK,  FACEBOOK  PIXEL,  https://developers.facebook.com/docs/facebook-pixel/  (last visited January 2023).
[10] *Id.*
[11] *Id.*

permit an ordinary person to identify a specific individual's video-watching behavior.' " *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)).

19.    Plaintiff has a Facebook account.  Defendants disclosed information that allowed Facebook (and any ordinary person) to identify Plaintiff's video-watching behavior, including the user's Universal Resource Locator ("URL") and page view information.  Microdata discloses the video's title and other descriptors.

20.    The aggregate pixel events (Page View and Microdata Automatically Detected) permit an ordinary person to identify the video's content, title, and location.

21.    Facebook confirms that it matches activity on the Website with a user's profile.  Facebook allows users to download their "off-site activity," which is a "summary of activity that businesses and organizations share with us about your interactions, such as visiting their apps or websites."[12]  The off-site activity report confirms that Defendants identify an individual's video viewing activities.  As such, Defendant disclosed Plaintiff's PII to Facebook.

**D.    PLAINTIFF IS A "CONSUMER" UNDER THE VPPA**

22.    The VPPA defines the term "consumer" to mean "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]"  18 U.S.C. § 2710(a)(1).

23.    Plaintiff has purchased products advertised on Defendant's website by third parties from which Defendant receives direct or indirect compensation.  As such, Plaintiff is a "purchaser" and therefore a "consumer" under the VPPA.

24.    Plaintiff is a consumer privacy advocate with dual motivations for watching a video on Defendants' Website.  First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendants.  Second, Plaintiff is a "tester" who

---

[12] *See* https://www.facebook.com/help/2207256696182627 (Off-Facebook Activity is only a "summary" and Facebook acknowledges "receiv[ing] more details and activity than what appears in your Facebook activity." What is more, it omits "information we've received when you're not logged into Facebook, or when we can't confirm that you've previously used Facebook on that device.") (last visited January 2023).

works to ensure that companies abide by the obligations imposed by federal law.  As someone who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

25.    During the past year, Plaintiff visited the Website and watched one or more videos.

26.    When Plaintiff watched videos on the Website, Defendants disclosed event data, which recorded and disclosed the video's title, description, and URL, to Facebook. Alongside this event data, Defendants also disclosed identifiers for Plaintiff, including the c_user and fr cookies.  In other words, Defendants did exactly what the VPPA prohibits: they disclosed Plaintiff's video viewing habits to a third party.

27.    Visitors would be shocked and appalled to know that Defendants secretly disclose to Facebook all of the key data regarding a visitor's viewing habits.

28.    Defendants' conduct is illegal, offensive, and contrary to visitor expectations: indeed, a recent study conducted by the Electronic Privacy Information Center, a respected thought leader regarding digital privacy, found that: (1) nearly 9 in 10 adults are "very concerned" about data privacy, and (2) 75% of adults are unaware of the extent to which companies gather, store, and exploit their personal data.

29.    By disclosing Plaintiff's event data and identifiers to Facebook, Defendant knowingly disclosed Plaintiff's PII to a third-party.

## V.    CLASS ALLEGATIONS

30.    Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons in the United States who watched video content on a website owned, operated, or controlled by Defendants and whose PII was disclosed by Defendants to Facebook during the Class Period.**

1. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of

Defendant's website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

2. **Commonality and Predominance (Fed.R.Civ.P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

> a. whether Defendants collected Plaintiff's and the Class's PII;
>
> b. whether Defendants unlawfully disclosed and continues to disclose their users' PII in violation of the VPPA;
>
> c. whether Defendants' disclosures were committed knowingly; and
>
> d. whether Defendants disclosed Plaintiff's and the Class's PII without consent.

3. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, had PII collected and disclosed by Defendants.

4. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.

5. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues

FIRST AMENDED CLASS ACTION COMPLAINT

presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

## VI.    CAUSE OF ACTION
## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT
### 18 U.S.C.§ 2710, *et seq.*

31.    Defendants are a "video tape service provider" because they create, host, and deliver videos on the website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials." 18 U.S.C. § 2710(a)(4).  Defendants also use the videos to collect and disclose viewers' PII so it can later retarget them for advertisements.

32.    Plaintiff and members of the Class are "consumers" as set forth above.  18 U.S.C. § 2710(a)(1).

33.    Defendants disclosed to a third party, Facebook, Plaintiff's and the Class members' personally identifiable information. Defendants utilized the Facebook Tracking Pixel to compel Plaintiff's web browser to transfer Plaintiff's identifying information, like his Facebook ID, along with Plaintiff's event data, like the title of the videos he viewed.

34.    Plaintiff and the Class members clicked on videos on the website.

35.    Defendants knowingly disclosed Plaintiff's PII because it used that data to build audiences on Facebook and retarget them for its advertising campaigns.

36.    Plaintiff and Class members did not provide Defendants with any form of consent—either written or otherwise—to disclose their PII to third parties.

37.    Defendant's disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendants, individually and on behalf of all others similarly situated, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class;

b. For an order declaring that Defendant's conduct violates the VPPA;

c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. An award of statutory damages under the VPAA;

e. An award of punitive damages;

f. For prejudgment interest on all amounts awarded;

g. For injunctive relief to stop the illegal conduct; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs of suit.

Dated:  February 13, 2023                    PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott. J. Ferrell
Attorneys for Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT